UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MARKO LARCHARR MCGEE**, | **2:25-CV-10414-TGB-APP** |
| Petitioner, | HON. TERRENCE G. BERG |
| vs. | |
| **JEFF TANNER,** | **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |
| Respondent. | |

Marko Larcharr McGee was convicted after a jury trial in the Calhoun County Circuit Court of first-degree murder, felon in possession of a firearm, felony-firearm, carrying a concealed weapon, and resisting arrest. He was sentenced to mandatory life for the murder conviction and lesser terms for the other offenses. McGee filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 asserting that he was erroneously prevented from admitting evidence that the victim was planning to kill him, and that the prosecutor committed misconduct by eliciting testimony that McGee had a prior violent conviction. Because the claims are without merit or procedurally defaulted, the petition will be **DENIED**.

# I. BACKGROUND

The Michigan Court of Appeals summarized the facts of the case on direct appeal. The summary is presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case stems from an incident in which defendant's actions resulted in the death of the victim, Diabulo White. Expert testimony from Doctor Amanda Fisher-Hubbard, a forensic and neuropathologist, regarding the autopsy performed on White's body revealed that White died as a result of multiple injuries to his head and neck. Dr. Fisher-Hubbard testified that there were blunt force injuries to White's head and neck, indications of strangulation, and stab wounds to the neck. She also testified that White's hyoid bone, which is part of the neck structure, was fractured, which is commonly seen in cases of strangulation. There was a hemorrhage around the fracture, which indicated that White was alive when the bone was fractured.
>
> According to defendant's testimony, in the early morning hours of Saturday, May 19, 2018, he opened his front door to let his dog out when he was confronted with an intruder standing in his doorway. According to defendant, the intruder, who was later identified as White, struck him with a gun, which caused the gun to discharge. Defendant and White began to struggle over the gun until White began to strike defendant with a different, blunt object, which turned out to be a hammer. Defendant and White both lost their grip on the gun, which caused it to fly out of both of their reaches, but defendant was able to gain control of the hammer. Defendant struck White twice with the hammer before he stopped moving. Defendant removed a mask White was wearing, revealing that the intruder was White. Defendant

2

then moved White's car into his garage, loaded White's body into the trunk, doused the body in gasoline intending to burn it, and drove the car to White's neighborhood. Ultimately, defendant did not burn the body or the car and, instead, left it parked on private property from where it was subsequently towed.

White's body was discovered on May 21, 2018, by his girlfriend, who was the owner of the car, when she arrived at a tow yard to retrieve her car. The Battle Creek Police Department received an anonymous tip that defendant was the assailant and that he was unlawfully in possession of a firearm. After defendant attempted to flee from police, he was apprehended, and a gun was located in close proximity. Police interviewed defendant, who offered several different versions of the story before landing on the account that he testified about at trial. Eventually, defendant confessed to police that he had killed White in self-defense, put his body in the trunk of White's car and took the car to White's old neighborhood.

Relevant to this appeal, an evidentiary hearing was held on the third day of trial regarding the admissibility of a screenshot of a direct message on Facebook between Rochelle James, a woman who shared a child with White, and Daleeka Daniels, defendant's biological daughter. The Facebook message stated:

> Im trying cuz i just rolled up now trying to clear my head and they said marko did it and dee told me Friday at 2 he was laying on him and he was about to kill him thats the last time i talked to dee he said that then he was with marko a little after 2 and that was the last time he was seen alive[.]
>
> They arrested marko and some young [n***a] with dreads they did that they caught my baby slipping but he got a shot off on one of them

3

not sure who but someone got shot dee aint no hoe
and he wasn't going out without a fight[.]

At the evidentiary hearing, James testified that Daniels, her cousin, reached out to her via Facebook after hearing what happened to White. James responded with the above quoted message, but she testified that the information in the message was not from her personal knowledge, rather actually something that she "heard in the streets" and from family and friends. James explained that she was angry that her child's father was murdered and, therefore, repeated information that she heard in the streets. James clarified that the message was a lie because White never told her what was said in the message. At the end of the evidentiary hearing, the trial court informed defense counsel that he could call James as a witness the following day and she would be permitted to testify that she sent the message to Daniels; however, the trial court maintained that defense counsel would be required to lay a proper foundation for the evidence to avoid a hearsay issue.

On the fourth day of trial, James was not called as a witness because of a conflict with her work schedule. Therefore, the parties stipulated that, if James were called, "her testimony would be to confirm the information provided by Detective VanDyke, that Ms. James sent a Facebook Messenger message to Ms. Daniels." Battle Creek Police Department Detective Jamie VanDyke's testimony regarding the Facebook message detailed that James reached out to her with information pertaining to the case and provided her with a screenshot of the Facebook message. Detective VanDyke testified that the information in the message "had not been substantiated by the evidence of the case," however, she did agree that the information in the screenshot "paired with" defendant's claim during his interview that White's attack was planned.

4

Next, the trial court made its conclusive ruling on the admissibility of the screenshot, stating:

> In the meantime, I would indicate that we've had many discussions regarding the admissibility of the Facebook message screenshot.
>
> I've had a chance to review it, I've looked at the applicable case law, and I've also heard the testimony of Ms. James that was done in a quick evidentiary hearing, outside the presence of the jury, yesterday. And based upon her answers and the information that that was based simply upon word on the street or information she had heard on the streets, I cannot find any exception to the hearsay rule that would allow that information to be admissible, nor can I find, even in the catch all exception, that that information would have any type of reliability.

Defense counsel objected to the trial court's ruling, arguing that "[t]here can't be anything on more fours with 803(3), than that, motive, intent, plan, scheme." Defense counsel stated that White's intent and motive were clear in the message.

Also relevant to this appeal was the prosecution's method of proving beyond a reasonable doubt defendant's ineligibility to possess a firearm because of his prior felony conviction. At the time of his arrest, defendant had four felony convictions: (1) attempted malicious destruction of property over $100, Mich. Comp. Laws 750.377a, from 1992; (2) carrying a concealed weapon, Mich. Comp. Laws 750.227, from 1994; (3) assault with intent to do great bodily harm less than murder, Mich. Comp. Laws 750.84, from 1994; and (4) assaulting, resisting, or obstructing a police officer, Mich. Comp. Laws 750.81d(1), from 2012. In establishing defendant's guilt for the charge of felon-in-possession, the

prosecution focused on defendant's conviction of assault with intent to do great bodily harm less than murder from 1994. The prosecution mentioned this conviction in its opening statement, stating that defendant could not be in possession of a firearm because of his prior felony of assault with intent to do great bodily harm less than murder. During trial, the prosecution had Detective Sutherland read a felony conviction form for defendant and state the felony charged, which was assault with intent to do great bodily harm less than murder. The prosecution brought up the conviction again during its cross-examination of defendant, asking defendant if he was convicted of assault with intent to do great bodily harm less than murder, to which defendant testified he pleaded guilty to the charge in 1994. The prosecution mentioned the conviction a final time during its closing arguments, indicating that defendant's conviction of assault with intent to do great bodily harm less than murder rendered him ineligible to possess a firearm. None of the other felonies were mentioned by the prosecution.

*People v. McGee*, No. 363282, 2023 WL 9015109, at *1-3 (Mich. Ct. App. Dec. 28, 2023).

Following his conviction and sentence, McGee filed a direct appeal. His appellate brief raised the following two claims:

I. The trial court erred and denied Mr. McGee his due process right to a fair trial when she refused to admit the content of a text message into evidence under the hearsay exception of state of mind or as a prior inconsistent statement.

II. Marko McGee was denied Due Process and a fair trial when the prosecution intentionally and excessively injected remarks about a prior felony conviction that were deliberate attempts to arouse prejudice against Mr. McGee.

ECF No. 11-12, PageID.1143.

The Michigan Court of Appeals affirmed in an unpublished opinion. *McGee*, 2023 WL 9015109, at *8. The Michigan Supreme Court subsequently denied leave to appeal by standard order. *People v. McGee*, 5 N.W.3d 38 (Mich. 2024) (Table). McGee did not appeal to the United States Supreme Court or seek collateral review before the trial court. He instead filed the instant petition for habeas relief.

## II. STANDARD OF REVIEW

Section 2254(d) of Title 28 of the United States Code limits federal habeas review of claims that were adjudicated on the merits by the state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

Under this standard a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. ANALYSIS

#### A. Exclusion of the Facebook Message

McGee first claims that he was denied a fair trial when the trial court prohibited him from presenting a Facebook message from the victim's child's mother indicating that the victim told her that he was planning to kill McGee. The Michigan Court of Appeals rejected the claim, finding that the message was properly excluded on hearsay grounds. *McGee*, 2023 WL 9015109, at *4–6. The court also found that the message was not admissible as impeachment evidence. *Id.* This claim is without merit because the state court decision did not unreasonably apply clearly established federal law.

As an initial matter, the state court determination that the message was not admissible as a matter of state evidentiary law is binding on this Court, and any claim that the state court erred as a matter of state evidentiary law is generally not cognizable. *See Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014); *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) ("Trial court errors in state procedure or evidentiary law do not rise

to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment.").

The "clearly established law" that is pertinent to this claim is not state evidentiary rules but is the constitutional prohibition against the arbitrary or disproportionate exclusion of evidence that is "important" to the defense. *Loza v. Mitchell*, 766 F.3d 466, 485 (6th Cir. 2014) (citations omitted). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *United States v. Reichert*, 747 F.3d 445, 453 (6th Cir. 2014) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)).

Nevertheless, a defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (internal alterations and quotation marks omitted). "[T]he Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes*, 547 U.S. at

9

326–27 (internal alterations and quotation marks omitted); *United States v. Humphrey*, 608 F.3d 955, 962 n. 3 (6th Cir. 2010).

"The exclusion of defense evidence violates a defendant's constitutional right to present a defense only where it is 'arbitrary' or 'disproportionate'; that is, where 'important defense evidence' is excluded without serving 'any legitimate interests' or in a manner that is 'disproportionate to the ends that [the rationale for exclusion is] asserted to promote.'" *Reichert*, 747 F.3d at 453 (quoting *Holmes*, 547 U.S. at 324, 325, 326). Because a defendant suffers a constitutional violation only if evidence in which the defense has a "weighty interest" is impermissibly excluded, *see Ferensic v. Birkett*, 501 F.3d 469, 475–76 (6th Cir. 2007), the arbitrary or disproportionate exclusion of defense evidence has constitutional significance only if the excluded evidence, "evaluated in the context of the entire record[,] creates a reasonable doubt that did not otherwise exist." *Blackwell*, 459 F.3d at 753 (quotation marks and internal alteration omitted).

The evidence at issue here was a Facebook message written by Rochelle James (the mother of the victim's child) to McGee's daughter, who was also her cousin. ECF No. 11-8, PageID.958–59. Part of the message stated: "D [the victim] told me Friday at 2:00, he was laying on him and he was about to kill him." *Id.* at PageID.961. At a midtrial evidentiary hearing to determine the admissibility of the message, James

10

testified that the contents of the message came from "what I heard in the streets, and what I heard from friends and family from what they heard in the streets." *Id.* at PageID.960. She explained that although the message was worded in a way that suggested that the victim personally told her that he was going to kill McGee, that in fact she did not hear it directly from the victim. *Id.* at PageID.961–63. The trial court found that there was therefore no foundation to admit the message as a statement made by the victim, as James denied that it came from him. *Id.* at PageID.965; ECF No. 11-9, at PageID.994.

The legitimate interest served by hearsay rules is the exclusion of unreliable evidence that is incapable of being subject to cross-examination. *See, e.g., United States v. Winters*, 33 F.3d 720, 723 (6th Cir. 1994) (quoting *United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986) (citing *Anderson v. United States*, 417 U.S. 211, 219 (1974)). Statements made outside of court might be inaccurate, insincere, or otherwise unreliable. The statement at issue here—a purported statement by the victim that he planned to kill McGee—was buried in multiple levels of hearsay. The statement by the victim appeared in a private message by a person who heard the information on the street, or worse, from what people on the street heard from other people.

"Due process 'does not compel' states to allow 'evidence that is unreliable' or of 'questionable exculpatory value.'" *Mack v. Bradshaw*, 88

11

F.4th 1147, 1162 (6th Cir. 2023) (quoting *Turpin v. Kassulke*, 26 F.3d 1392, 1398 (6th Cir. 1994)). Hearsay evidence is therefore excludable even if it may be relevant to a defense. *See McCullough v. Stegall*, 17 F. App'x. 292, 295 (6th Cir. 2001); *Durr v. Burt*, No. 16-10628, 2018 WL 6727046, at *7 (E.D. Mich. Dec. 21, 2018) (Ludington, J.). While it would certainly be important to the defense to present any evidence to support a self-defense claim, given the extremely doubtful reliability of a statement buried underneath an unknown number of layers of hearsay, exclusion of the statement was not disproportionate to the interests served in enforcing the evidentiary rule. The rejection of the claim by the Michigan Court of Appeals did not involve an unreasonable application of established federal law.

McGee argues in the alternative that the statement was admissible to impeach James' testimony. But James was not questioned at trial whether the victim made a statement to her on the day of the incident that he was going to kill McGee. In fact, she ended up not testifying at all at trial. Rather, after the midtrial hearing, the parties stipulated that "if called, Ms. James would confirm, as testified to by Detective VanDyke, that she did in fact send a Facebook Messenger message to Daleeka Daniels." ECF No. 11-9, at PageID.998. VanDyke, in turn, merely testified that he obtained a screenshot of a message from James without testifying to the contents of the message. ECF No. 11-8, at PageID.802–

03. VanDyke only testified that the information provided by James could not be substantiated. *Id.* at PageID.803. Accordingly, there was no testimony offered by James for which the message could have been used to impeach her. The state court's rejection of this part of the claim was not unreasonable.

McGee's first claim or error is therefore without merit and will be **DENIED**.

### B. Admission of Prior Conviction

McGee's second claim asserts that the prosecutor committed misconduct when it supported the felon-in-possession charge with evidence of McGee's assault with intent to do great bodily harm conviction when a less violent and more recent prior conviction was available to establish that McGee was prohibited from possessing a firearm. The Michigan Court of Appeals found that McGee forfeited review of the claim because he did not object to the prosecutor's conduct at trial. *McGee*, 2023 WL 9015109, at *5; *see People v. Clark*, 948 N.W.2d 604, 629 (Mich. Ct. App. 2019) ("To preserve a claim of prosecutorial misconduct, the defendant must make a timely and specific objection to the conduct at trial.").

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85–87 (1977). The doctrine of

procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001).

In this case, the Michigan Court of Appeals explicitly relied on McGee's failure to object at trial as a grounds for its decision. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *People v. Carines*, 597 N.W.2d 130, 139 (Mich. 1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). Though the state court went on to discuss the validity of the prosecutor's actions for plain error, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). The fact that the Michigan Court of Appeals conducted plain error review therefore did not constitute a waiver of the procedural default. *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

To overcome the procedural default, McGee must demonstrate cause for failing to comply with the procedural rule and actual prejudice

resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784–85 (6th Cir. 1996). To establish cause, a petitioner must establish that an external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such reasons include interference by officials, attorney error rising to the level of constitutionally ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991).

The only candidate for a cause argument here would be a claim that McGee's trial counsel was ineffective for failing to object to the prosecutor's conduct. However, in order to establish cause to excuse a procedural default, such a claim of ineffective assistance of counsel must itself be exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). McGee has not done so. He never presented the state courts with a claim that his trial attorney was ineffective for failing to object to the prosecutor's choice to support the felon-in-possession charge with his assault conviction. He did not properly and fully exhaust any ineffective assistance of counsel claims on direct appeal or collateral review in the state courts. He thus cannot establish cause to excuse this procedural default. When a habeas petitioner fails to establish sufficient

15

cause to excuse a procedural default, the Court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

McGee also fails to demonstrate that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. at 479–80. To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). McGee does not offer any support for such an argument. This claim is thus barred by procedural default and does not warrant federal habeas relief.

As neither claim warrants relief, the petition for writ of habeas corpus is denied.

### IV. CERTIFICATE OF APPEALABILITY

In order to appeal the Court's decision, McGee must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that McGee has failed to demonstrate entitlement to habeas relief. Therefore, a certificate of appealability is **DENIED**.

## V. CONCLUSION

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, and 2) **DENIES** a certificate of appealability.

**SO ORDERED.**

_s/Terrence G. Berg_____
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: February 26, 2026

17